# United States District Court
# District of Massachusetts

RICHARD LEMAR,
    Plaintiff,

V.                               CIVIL ACTION NO. 11-CV-11333-FDS

W. H. MAZE COMPANY, D/B/A
    INDEPENDENT NAIL COMPANY,
        Defendant.

## *REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#35)*

COLLINGS, U.S.M.J.

### *I. Introduction*

This is an action for an alleged unlawful termination of a factory employee, Richard LeMar ("LeMar" or "the plaintiff"), who claims that his former employer, Independent Nail Company ("Independent Nail" or "the defendant"), unlawfully terminated his employment because of an injury he sustained to his lower back. The first count alleges a violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the second count alleges a violation of Massachusetts General Laws chapter 151B § 4.

## II. The Facts

The evidence in the light most favorable to the plaintiff is that LeMar took a work-related injury leave from his job on October 17, 2008. He returned to work on November 25, 2008 with a doctor's clearance to resume full duty. At a meeting with his supervisors, James Mitchell ("Mitchell") and Joe Walent ("Walent"), LeMar presented the doctor's note and was told that he was being laid off. The plaintiff's testimony as to what occurred at the meeting is as follows:

> Q. Okay. Mr. LeMar, I want to focus your attention on the meeting that you told me about before when you were told that you were being laid off. So during that meeting, I'd like you to tell me specifically what was said to you as the reason for your layoff.
>
> A. I was told I was laid off, okay, until my back heals 100 percent, they're giving me a chance to rest my back until my back heals 100 percent. That's what I was told.
>
> Q. Okay, and you were told that by Mr. Walent, you said?
>
> A. Yes, and Jim Mitchell agreed.
>
> Q. And how do you know he agreed?

> A. Because he was right there.
>
> Q. But did he say something to that effect?
>
> A. Yes.
>
> Q. Okay. What did he say?
>
> A. He says "yes, I agree."
>
> \* \* \*
>
> Q. Had anybody as of that time informed you – again, I'm talking about Independent Nail or Mr. Mitchell, Mr. Walent or any other representative of Independent Nail – informed you that business was bad and people were going to have to be laid off?
>
> A. No.

#42-1, pp. 7-11.

### III. Discussion

In my opinion, this testimony is direct evidence of discrimination and suffices to preclude summary judgment. As the First Circuit has stated:

> ...[E]vidence is 'direct'...when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision.

*Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000)(citations and footnote omitted).

The testimony recited, *supra*, precisely meets that definition. The statements were made at a meeting held when the plaintiff returned to work with a note

from his doctor stating that he was cleared for full duty. The meeting had no other purpose other than to discuss the plaintiff's job status. The statements were made in the presence of the decisionmaker who affirmatively stated his agreement with them. And the statements "directly reflect[ed] the alleged animus and b[ore] squarely on the contested employment decision." *Febres,* 214 F.3d at 60. As said in another context equally applicable here, "[g]iven these attributes, the statement cannot be dismissed as mere background noise or as a stray remark." *Id.* at 61 (citing *Fernandes v. Costa Bros. Masonry,* 199 F.3d 572, 583 (1st Cir. 1999), *abrogated on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) (holding that direct evidence of discrimination is not required to prove discrimination in mixed motive cases under Title VII)).

Further, in my opinion, the statements are not ambiguous. Again, citing the First Circuit,

> Comments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria constitute direct evidence of discrimination. *See Sheehan v. Donlen Corp.,* 173 F.32d 1039, 1044 (7th Cir. 1999)(observing that the term 'direct evidence' covers more than virtual admissions of illegality). The mere fact that a fertile mind can conjure up some innocent explanation for such a comment does not undermine its standing as direct evidence. *See id.*

*Febres,* 214 F.3d at 61.

Further, it is well to keep in mind the First Circuit's "caveat" in a footnote, *i.e.,*

> In a case tried to a jury, the phrase ['direct evidence'] does not require that the plaintiff produce evidence that the court finds persuasive. In other words, credibility determinations in respect to direct evidence are for a properly instructed jury, not for the judge.

*Febres,* 214 F.3d at 60, n. 3 (citations omitted).

The case of *Patten v. Wal-Mart Stores East, Inc.,* 300 F.3d 21 (1st Cir. 2002), *cert. denied,* 539 U.S. 937 (2003), upon which Independent Nail heavily relies, is not to the contrary. In that case, the plaintiff had a problem with absenteeism which had become quite serious. She "...had missed six days of work, left early on another day (without justification), and called in sick one day." *Patten,* 300 F.3d at 24. When she returned to work, her supervisor called the plaintiff into her office and stated that "[w]e understand that you have health problems. We understand that you are disabled, but we don't want you working in this store." *Id.* The First Circuit held that this statement did not rise to the level of direct evidence because the statement was "...subject to the interpretation that management fully understood that [the plaintiff] had a disability but could not further abide [plaintiff's] gross and repeated

absenteeism." *Id.* at 25. In the instant case, there is no evidence that the defendant had any problems with LeMar's attendance or job performance. In other words, there is nothing which would allow an interpretation that what was meant was that the plaintiff was being laid off because of the economic decline and the back problem was just mentioned in passing.[1]

In analyzing the *Patten* case, the Court is aware of the language seized upon by counsel for Independent Nail that "'direct evidence is relatively rare'" and "...require[s] statements that give [the Court] a 'high degree of assurance' that a termination was attributable to discrimination." *Patten,* 300 F.3d at 25 (citing *Fernandes,* 199 F.3d at 580, 583). Quite frankly, it is unclear what the phrase "high degree of assurance" adds to the equation, especially in light of the later pronouncement, quoted at p. 5, *supra,* that "['direct evidence'] does not require that plaintiff produce evidence that the court finds persuasive." *Febres,* 214 F.3d at 60, n. 3 (citations omitted). It seems that these cautionary qualifications to what constitutes "direct evidence" were in response to the

---

[1] It should be recalled that the evidence on summary judgment must be taken in the light most favorable to the plaintiff. Of course, there is nothing to prevent the defendant at trial from offering evidence that the real reason for the layoff was the economic turndown and that the statement was merely a notation that the layoff would give LeMar an opportunity for his back to recover 100 percent. In fact, it appears that the defendant has strong evidence that this was the case. But it is the jury which has to determine the weight to be given both LeMar's and Independent Nail's evidence based on its credibility determinations.

then-prevailing law that one needed direct evidence to get a mixed motive instruction. *Fernandes,* 199 F.3d at 580. However, since the Supreme Court's decision in 2003 in *Desert Palace, Inc. v. Costa,* 539 U.S. at 98-101 holding that direct evidence is not necessary to be entitled to a mixed motive instruction, the need to confine severely what constitutes "direct evidence" is no longer an imperative. Be that as it may, it is the Court's view that based on the evidence and current law, the most prudent course in this case is to deny the motion for summary judgment and proceed to trial.

In conclusion, Independent Nail is not entitled to summary judgment on either claim. Because the Supreme Judicial Court of Massachusetts applies federal anti-discrimination case law when analyzing chapter 151B claims, the Court considers federal case law to assess both counts of the complaint. *See, e.g., Noviello v. City of Boston*, 398 F.3d 76, 91 (1st Cir. 2005) (applying federal case law to chapter 151B claim and citing *Wheatley v. AT & T Co.*, 418 Mass. 394, 397, 636 N.E.2d 265, 268 (Mass. 1994)(further citations omitted)); *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 153–54 (1st Cir. 2009) ("federal case law construing the ADA should be followed in interpreting the Massachusetts disability law")(internal quotations marks and citations

omitted).

### IV. *Recommendation*

I RECOMMEND that Defendant's Motion for Summary Judgment (#35) be DENIED and that the case stand for trial.

### V. *Review by the District Judge*

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603

(1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

June 10, 2013.